UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JOYCE B. WILLIAMS, ) | Civil Action No.: 4:19-cv-03029-TER |
|           Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **ORDER** |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security; ) | |
|           Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned by voluntary consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff filed an application for DIB and SSI on May 11, 2016, alleging inability to work since April 17, 2016. (Tr. 20). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on July 30, 2018, at which time, a vocational expert (VE) and Plaintiff testified. (Tr. 20). The Administrative Law Judge (ALJ) issued an unfavorable decision on October 31, 2018, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 20-29). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on September 9, 2019, making the ALJ's decision the Commissioner's

final decision. Plaintiff filed this action on October 25, 2019. (ECF No. 1).

B.     **Plaintiff's Background and Medical History**

Plaintiff was born on July 10, 1973, and was forty-two years old at the alleged onset date. (Tr. 27). Plaintiff has a limited education. (Tr. 27). Plaintiff alleges disability originally due to crushed right foot and injured right leg due to a vehicle accident. (Tr. 68). Only relevant records will be summarized under pertinent issue headings.

C.     **The ALJ's Decision**

In the decision of October 31, 2018, the ALJ made the following findings of fact and conclusions of law (Tr. 20-29):

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.

2. The claimant has not engaged in substantial gainful activity since April 17, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post fracture of the right tibia and fibula ankle fracture with ORIF, moderate degenerative changes right knee, history of DVT right leg on Coumadin therapy, obesity, and dehiscence of surgical wound right ankle (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is able to lift, carry, push and pull up to 20 pounds occasionally and less than 10 pounds frequently. She can sit for 6 hours in an 8- hour workday, stand and/or walk for 2 hours in an 8-hour workday. She can frequently balance and occasionally crouch, kneel, stoop and climb stairs and ramps, but can never crawl or climb ladders, ropes or scaffolds. She has no restrictions reaching bilaterally in all directions including overhead and no restrictions with fingering, feeling and handling. She can frequently use her hands and occasionally use her feet for the operation of controls. She can work at heights or near bodies

       of waters when protected from falls, and must avoid working with or near dangerous and moving type of equipment or machinery, to include dangerous moving type of parts. She must also avoid concentrated exposure to vibrations.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on July 10, 1973 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from April 17, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ failed to properly assess the opinions of Dr. Shannon, Dr. Hagan, Dr. Jacobs, Ms. Parkinson, and Ms. Adams. Plaintiff also argues the ALJ failed to consider the entire case record as required in assessing the consistency of Williams' subjective reports and the evidence. Defendant argues the ALJ supported findings with substantial evidence.

**A.   LEGAL FRAMEWORK**

    **1.   The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial

3

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary.

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971);

*Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B.    ANALYSIS**

**Opinions: Elevation and Standing Limitations**

Plaintiff argues the ALJ failed to properly assess the opinions of Dr. Shannon, Dr. Hagan, Dr. Jacobs, Ms. Parkinson, and Ms. Adams.

Medical opinions are statements from acceptable sources that reflect judgments about what you can still do despite impairments and about your physical or mental restrictions. 20 C.F.R. § 404.1527. The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide

6

a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c). The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

The ALJ did not discuss any opinions/limitations by Dr. Shannon, Dr. Hagan, or Dr. Jacobs. Defendant argues such limitations/restrictions are instructions contained in visit notes and were not intended to be opinions. (ECF No. 16 at 11-12). Medical opinions are statements from acceptable sources that reflect judgments about what you can still do despite impairments and **about your physical** or mental **restrictions**. 20 C.F.R. § 404.1527(emphasis added).

Plaintiff testified she has to prop her leg a couple times a day. (Tr. 46). Plaintiff's attorney noted Plaintiff's ankle at the hearing appeared to be significantly swollen and asked her if it was always like that or if it was just from coming to the hearing. Plaintiff testified it was always like that. Plaintiff testified her doctors told her she needs to keep it elevated. (Tr. 47). Plaintiff testified NP Parkinson prescribed a cane. (Tr. 47). Plaintiff was in a wheelchair until August 2016. (Tr. 48). Plaintiff can stand for 10-15 minutes and that aggravates the swelling. (Tr. 49). Plaintiff has her leg elevated a couple of hours a day. (Tr. 50). She must elevate all day on half the days of a month or week. (Tr. 50). Plaintiff testified that Dr. Shannon told her she must elevate her leg a couple of times a day and that he could not take the metal out because the way her foot was crushed and she would always have problems. (Tr. 51). Plaintiff must wear slip-on shoes that are a larger size. (Tr. 52). Pain and swelling are factors in elevating her foot. (Tr. 53). When her leg is swollen, she does not drive. (Tr. 55). Plaintiff can wash her own dishes. (Tr. 56). If a hypothetical individual had to prop her right foot at least waist high for two hours out of each work day, the VE testified full time employment was eliminated. (Tr. 61). At the hearing, Plaintiff's attorney called attention to records of several doctors noting necessary elevation. (Tr. 62-63).

In early April 2016, Plaintiff had fractures of the distal tibia and fibula with disruption of the ankle mortise joint on the right. (Tr. 326). In April 2016, prior to surgery, Dr. Shannon advised Plaintiff to continue right lower extremity immobilization and non weight bearing status. (Tr. 377). In late April 2016, it is noted that Plaintiff did not follow up with a surgeon and had been weightbearing against medical advice. (Tr. 390). In May 2016, Plaintiff was not yet weight bearing after surgery and was in a non weight bearing cast per Dr. Shannon. (Tr. 438, 440). In June 2016, Plaintiff was seen by Dr. Shannon and Plaintiff could begin weightbearing as tolerated. (Tr. 434).

In October 2016, Dr. Shannon stated Plaintiff was to continue with physical therapy, home exercise, and weight bearing as tolerated. (Tr. 474). In January 2017, Dr. Shannon noted Plaintiff's complaints of pain with weight bearing. Dr. Shannon stated:"Because of wound problems, DVT, and post surgical problems, patient should avoid prolonged standing/walking, which will probably preclude her from returning to work in the next 6 months, perhaps as long as the next year." (Tr. 929).

In June 2016, when Plaintiff's cast was removed, her surgical wound opened from leg swelling with DVT. (Tr. 379-80). In July 2016, upon exam, Plaintiff had diminished feeling in feet. (Tr. 896). In early July 2016, Dr. Hagan of the Wound Healing Institute noted necrotic tissue was still present and plates and screws were visible in wound. Wound problems were clearly related to DVT and massive leg swelling. (Tr. 812). At visits in early, mid, and late July 2016, Dr. Hagan instructed Plaintiff to elevate her legs to heart level for 30 minutes daily and/or when sitting three to four times a day, and avoid standing for long periods of time. (Tr. 813, 891, 912, 921, 372, 521, 586, 655, 835, 840). Plaintiff was still in a wheelchair in July 2016. (Tr. 847). In August 2016, Dr. Hagan instructed Plaintiff to elevate her legs to heart level for 30 minutes daily and/or when sitting three to four times a day and to avoid standing for long periods of time and also commented that he did not think the lateral wound would heal for any length of time because of metal exposed and he agreed with weightbearing recommended by Plaintiff's orthopedist. (Tr. 738, 743, 757). Dr. Hagan again noted he did not expect area over metal to successfully heal. (Tr. 747). Dr. Hagan instructed Plaintiff to elevate her leg when sitting. Dr. Hagan noted it seemed some better and should keep gradually decreasing, but her right leg was likely always to be swollen. (Tr. 748). In September 2016, Dr. Hagan instructed Plaintiff to elevate her legs to heart level for 30 minutes daily and/or when sitting three to four times a day and to avoid standing for long periods of time. (Tr. 683-84,

9

687, 691, 695). In September and October 2016, physical therapy noted deficits in abilities to: rise onto toes to overhead reach, stand more than 15 minutes, walk, and wear a shoe. (Tr. 491, 499). In October 2016, Dr. Hagan instructed Plaintiff to elevate her legs to heart level for 30 minutes daily and/or when sitting three to four times a day and to avoid standing for long periods of time and also noted "elevation when sitting" and to slack off physical therapy due to Plaintiff attributing wound opening and pain to physical therapy. (Tr. 642, 647, 650-51). In November 2016, physical therapy noted the presence of a cast; Plaintiff's wound was still open. (Tr. 489). In November 2016, Dr. Cunningham of the Wound Healing Institute instructed Plaintiff to elevate her legs to heart level for 30 minutes daily and/or when sitting three to four times a day and to avoid standing for long periods of time. (Tr. 577). In November 2016 multiple times, Dr. Hagan instructed Plaintiff to elevate her legs to heart level for 30 minutes daily and/or when sitting three to four times a day and to avoid standing for long periods of time. (Tr. 566, 570, 582). In December 2016, Dr. Wheeler and Dr. Hagan instructed Plaintiff to elevate her legs to heart level for 30 minutes daily and/or when sitting three to four times a day and to avoid standing for long periods of time and to apply stocking in the morning and remove at bed time. (Tr. 508, 513, 517). Plaintiff was to continue compression therapy and keep feet elevated when possible when not ambulating. (Tr. 508). In December 2016, Dr. Wheeler noted that wounds had opened and required removal of some necrotic tissue. (Tr. 507). Edema from DVT likely caused her wound to open post op. (Tr. 513). In January 2017, Dr. Hagan's office noted Plaintiff still had some pain in her right foot. (Tr. 992). On January 6, 2017, "wound#2" was still open. (Tr. 998). On January 26, 2017, Dr. Hagan noted the wound had healed, Plaintiff was discharged, and Plaintiff could use a band-aid like dressing to the newly healed area. Compression, standing, and elevation instructions continued along with off loading and shoe referral due to right

foot swelling. (Tr. 994).

In June 2016, NP Parkinson noted Plaintiff was in a wheelchair and non weight bearing with edema of right lower extremity and foot. (Tr. 451). Plan was reduced physical activity. In late June 2016, NP Parkinson noted Plaintiff was walking with a limp and was seeing wound care. (Tr. 466). In September 2016, NP Parkinson noted Plaintiff walked with a limp and was seeimg wound care. Gait was later noted on the same page as normal. (Tr. 942). In November 2016, NP Parkinson noted Plaintiff was seeing wound care and taking pain medications as needed. Gait is noted as normal but with right foot and ankle wrapped. (Tr. 940). In April 2017, Plaintiff was seen by NP Parkinson. Plaintiff reported labs from the prior week by her orthopedist showed infection from foot surgery. Under "history," "she is not able to return to work, she needs regular medical visits, is on a blood thinner." (Tr. 934). Upon exam on April 24, 2017, Plaintiff had tenderness, limited range of motion, bony deformity, edema, and open wound. (Tr. 934). On April 13, 2017, NP Parkinson noted under "review of systems," Plaintiff reported wound has healed fully and "cannot return to work in this state." If her orthopedist was okay with it, coumadin was to be stopped since Plaintiff had been mobile for 6 months. Plaintiff still had some edema. (Tr. 938). Upon exam, Plaintiff had tenderness, limited range of motion, bony deformity, edema, and healed with scar lesion. (Tr. 938). Plaintiff had normal gait. In July 2017, NP Parkinson noted an exam of tenderness, limited range of motion, bony deformity, edema, and healed wounds with normal gait. (Tr. 1032). In November 2017, NP Parkinson noted complaints of right foot pain. (Tr. 1028). Plaintiff reported since the accident she was unable to complete daily tasks because pain and swelling occurs when she is on her feet for any extended period of time. Plaintiff reported being in bed most of the time. (Tr. 1029). Upon exam, Plaintiff had tenderness, limited range of motion, bony deformity, edema, and healed wounds with

normal gait. (Tr. 1030).

On April 3, 10, and 17, 2017, Dr. Jacobs noted "wound#4" was open and same elevation and compression was instructed. (Tr. 973-75, 977-980, 984-986). Gait was noted as normal on April 3 exam. (Tr. 984). On April 24, 2017, Plaintiff was seen by Dr. Jacobs. Full thickness wound with subcutaneous layer exposed; debridement was performed to remove necrotic tissue. (Tr. 968). Cultures were positive; Plaintiff needed antibiotics. (Tr. 968). Plaintiff was again instructed on standing and elevation and was to continue with "offloading of wound." (Tr. 968). It is noted Plaintiff was counseled on the "need for the use of compression and elevation to assist in healing." "Continue with compression therapy. Keep feet elevated when possible when not ambulating." (Tr. 970). On May 1, 2017, Plaintiff was seen by Dr. Jacobs. Wound was noted as healed with tenderness on palpation. (Tr. 960). Plan was wear compression stockings, avoid standing for long periods of time, and elevate legs to heart level 30 minutes daily and/or when sitting 3-4 times a day. (Tr. 960). On May 8, 2017, Plaintiff was seen by Dr. Pennington with complaint of right ankle wound. (Tr. 952). Upon exam, right ankle wound was healed. (Tr. 953). Plaintiff was to call if wound became an issue again. (Tr. 953).

On December 6, 2017, NP Parkinson completed a questionnaire form and opined Plaintiff could sit 4 hours and stand 1 hour and walk less than 1 hour at a time in a workday. (Tr. 1009). Plaintiff could occasionally lift 1-10 pounds. Plaintiff could never stoop or other posturals. Plaintiff needed to shift positions every 30 minutes. (Tr. 1009). Plaintiff could occasionally reach. Plaintiff could never repeatedly use feet. (Tr. 1010). Restrictions began in April 2016 and impairments were expected to last or have lasted 12 months. Plaintiff's legs needed to be elevated with prolonged sitting above 30 degrees for 75% of workday. (Tr. 1010). Objective evidence was injury and repair

with indwelling hardware that still needed to be removed. (Tr. 1010). Plaintiff was not able to engage in more than 20 hours of work a week. Plaintiff was limited in ability to sit throughout the day in a normal position. (Tr. 1012).

In April 2018, NP Adams completed a DSS form stating Plaintiff was unable to work permanently. (Tr. 1023). Basis was shattered right ankle with hardware and right knee and ankle pain with metal plates and screws in right ankle. (Tr. 1024). Upon exam the same day, Plaintiff had edema and normal gait. (Tr. 1028). In July 2018, NP Adams completed a form. (Tr. 1039). Plaintiff was not able to engage in more than 20 hours of work a week. Plaintiff was limited in ability to sit throughout the day in a normal position. Plaintiff's condition limited ability to stand and walk for no more than a few hours. (Tr. 1039). Another form was completed in July 2018 by NP Adams opining in a workday, Plaintiff could sit 8 hours total and four hours at a time, stand 4 hours total and 1 hours at a time, and walk two hours total and 15-30 minutes at a time. (Tr. 66). Plaintiff could occasionally lift/carry 1-10 pounds. Plaintiff could never stoop and could occasionally climb stairs. Plaintiff needed to shift positions at will depending on pain tolerance. Plaintiff could never handle, finger, or feel. Plaintiff could not have repetitive use of feet. (Tr. 67). Plaintiff needed to elevate legs above heart level for 80% of workday. (Tr. 67). Under the question for supporting objective evidence listed was history of DVT and joint/knee pain for two years. (Tr. 67).

As summarized above, there is a plethora of evidence in the record across multiple treating providers, including some specialists, regarding elevation restrictions/limitations, including an opinion that reasonably covers more than a 12 month period by Dr. Shannon, an orthopedic surgeon. This court does not weigh such evidence in the first instance. There is enough specificity in restrictions regarding elevation and standing across multiple providers and exams of edema and other

findings possibly supportive of such restrictions that such restrictions can be medical opinions, which the regulations define as statements from acceptable sources that reflect judgments about what you can still do despite impairments and about your physical or mental restrictions.[3] 20 C.F.R. § 404.1527. Elevation and standing limitations appear to be judgments about restrictions. The court cannot speculate as to the ALJ's treatment of this evidence where the ALJ did not address. The ALJ also devalued Plaintiff's statements regarding her elevation reports without considering these elevation restrictions from a multitude of treating providers, some specialists. (Tr. 26). Moreover, although NP Parkinson's and NP Adams's opinions were actually weighed and given no weight by the ALJ, the ALJ failed to address the 20 C.F.R. § 404.1527(c) factor of supportability and consistency of opinions across other treating providers as to elevation limitations. (Tr. 26). Regardless that they are not acceptable medical sources, their statements are to be considered as to how function is affected. The court cannot review whether the RFC is supported without the ALJ's review of the plethora of statements regarding elevation and standing restrictions by treating providers, some specialists.

The ALJ is obligated to consider all evidence, not just that which is helpful to his decision. *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope of review. *See Mascio v. Colvin*, 780 F.3d 632, 637-40 (4th Cir. 2015). The ALJ did not properly evaluate the 20 C.F.R. § 404.1527(c)

---

[3] Defendant's post hoc rationalization that the ALJ did not treat Dr. Shannon's statement as an opinion because it was a comment in a note and not part of a separate medical source statement does not align with the regulatory definition of an opinion. (ECF No. 16 at 13); 20 C.F.R. § 404.1527.

factors of supportability and consistency in relation to the evidence in the record and did not address restrictions/limitations stated by treating providers, some specialists. This also affects the subjective symptom evaluation as Plaintiff's reports of elevation were not considered with the treating provider's statements. "The ALJ's failure to 'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017)(internal citations omitted). Based on the foregoing, the court can not find that the ALJ's decision as supported by substantial evidence and remand is appropriate.

### III. CONCLUSION

The court is constrained by its limited function under 42 U.S.C. § 405(g). Our function is to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). As discussed above, the ALJ's decision is not based on substantial evidence.[4]

"We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984)(citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir.1977)). "The ALJ is not required to discuss every piece of

---

[4] Remand, rather than reversal, is required when the ALJ fails to explain her reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir.2013).

evidence, but if he does not mention material evidence, the court cannot say h[er] determination was supported by substantial evidence." *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007)(citing *Arnold v. Sec'y*, 567 F.2d 258, 259 (4th Cir.1977) ("The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty....")).

It may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is REMANDED to the Commissioner for further administrative action as set forth above.

February 24, 2021
Florence, South Carolina

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge